JAMES v. STATE.

No. A-11379. July 11, 1951.

(234 P. 2d 422.)

Jenner & Bradley, Hugo, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J. Appellant was charged, tried and convicted of the unlawful possession of intoxicating liquor, and in accordance with the verdict of the jury, was sentenced to pay a fine of $50, and be confined in the county jail of Choctaw county for 30 days. To reverse the judgment and sentence, he appeals.

The appeal was filed in this court on March 1, 1950, and the same day defendant filed a brief in support thereof. The case was submitted on February 28, 1951, at which time the state was given ten days to file an answer. No brief has been filed by the state.

On the day of arraignment, the defendant filed a motion to discharge the defendant and dismiss the charge against him. The motion was overruled, and on November 1, 1949, he filed a motion to suppress the evidence. Hearing was had on this motion on November 8th, at which time the defendant and Highway Patrolman Arch Merriott testified. The motion was overruled, and the case tried with the result above stated.

The facts, as disclosed by the record, briefly, are as follows:

The defendant had a small two-room house about ten feet from the highway, in Choctaw county, and about a quarter· of a mile from the county line running between McCurtain and Choctaw· counties. When asked by his attorney to describe his main building" he answered: "Well, my living quarters I have them cut off there from what is supposed to be a little old store, sell soda pop, and one thing and another, and I have a Delco system about twenty feet behind my house." He testified that he lived in the back room with his mother and three small children. The building containing the Delco system had a partition running through it, and one end was used as a chicken house.

On the evening in question Highway Patrolman Arch Merriott, in company with Patrolman Edwards, Jack Julian who was city marshal of Valliant

and a deputy sheriff of McCurtain county, and James Speck who "assisted" the marshal and deputy sheriff, were cruising in the patrol car. The patrolmen were assigned to McCurtain county, and Mr. Merriott testified that the county line between McCurtain and Choctaw counties was on a bridge, at the bottom of a hill and on a curve. It was his custom, when he reached the county line, to continue on into Choctaw county to the place of this defendant in order to turn his car around. On the occasion in question, Mr. Merriott, at the hearing on the motion to suppress, testified:

"As I started by his place I saw a man come out of the front with a paper sack and later found the man's name to be Greenwalt, Johnny Greenwalt, from Fort Towson, and I asked him what he had in the sack and he said whisky. * * * Yes, he had a half pint of Hill & Hill whisky and I called Woodrow James out of his place and informed him I was going to contact the county attorney and advise him that I knew the whisky had been bought there and I left then and went on to Valliant and was unable to contact the county attorney by telephone."

Valliant was four miles from defendant's place, and in McCurtain county, and when witness was unable to get in touch with the county attorney he, with his companion officers, returned to a point one-fourth of a mile from defendant's premises, left the car, and he and Julian walked on up to the house. They concealed themselves, and saw the defendant come out of his house with a box in his hands and go into the chicken house. He returned and carried another box from the house to the chicken house, and when he came out with the third box, the patrolman came out from his hiding place, and flashed a light on the defendant. Defendant was carrying a "beer case" with the lid down. Witness looked in the box and found that it contained whisky. He went in the chicken house, got the other two boxes, had the patrol car brought up, and "loaded the whisky in the patrol car and then we went and searched the house." He further testified that, "as soon as we got the whisky out of the chicken house I informed him he was under arrest." Defendant was taken to Valliant and placed in jail, and the sheriff of Choctaw county notified.

Arch Merriott and Jack Julian were the only two witnesses used by the state on the trial, and the defendant did not introduce any evidence, but demurred to the evidence of the state, requested a directed verdict, excepted to the verdict, and duly filed his motion for a new trial.

The officer making the arrest in this case testified that he had been a highway patrolman for 13 years, and apparently tried to justify his action in this instance by two facts. First, the fact that he saw a man coming from the front of defendant's place of business carrying a paper sack, and testified: "The way the paper sack was folded up around the top it had the appearance of a whisky bottle. The top of the sack was twisted around the neck of the bottle." The fact that the officer's suspicions were correct, and that the sack did contain whisky, did not justify him in stopping this man and looking in his sack. He did not arrest him, and so far as the record shows, he had no authority to stop him and inquire what he had in the sack. He had committed no offense in the presence of the officer, and the officer was not present when he acquired the whisky.

In the early case of Keith v. State, 30 Okla. Cr. 168, 235 P. 631 (and see also Miles v. State, 30 Okla. Cr. 254, 235 P. 1116, 1117), this court said:

"No search of the person or seizure of any article found thereon can be made on mere suspicion that the person is violating the prohibitory liquor laws in having intoxicating liquor in his possession, or without a search warrant, unless and until the alleged offender is in custody under a warrant of arrest, or shall be lawfully arrested without a warrant as authorized by law."

Second, the officer testified that he called the defendant out and told him he was going to contact the county attorney and advise him that he knew the whisky Greenwalt had in the sack was purchased from defendant. When he returned to defendant's home about an hour later, and threw his flashlight on defendant as he was carrying a box from his residence to the chicken house, he stated that defendant said, "You got me." He further testified that when he told defendant, after placing the boxes of whisky in the patrol car, that he was going to search his place, defendant made no objection.

Defendant admitted that he said, "You got me" when the officer walked up to him. The officer was in uniform, known to the defendant to be an officer, and less than an hour earlier had notified defendant he was going to report him to the county attorney. Under the circumstances, we are of the opinion that defendant's statement to the officer did not constitute a free and voluntary relinquishment and waiver of his constitutional right of immunity from an unlawful search, but, rather it was an indication that he would not resist the officers. Dawson v. State, 83 Okla. Cr. 263, 175 P. 2d 368. The officers did not take the trouble to secure a search warrant for defendant's premises, although they had reason to believe that he was selling intoxicating liquor. When approached, defendant was carrying the liquor from his residence, or place of business, to his chicken house, about fifteen or twenty feet from his home.

In Turknett v. State, 36 Okla. Cr. 401, 254 P. 985, this court held:

"Curtilage, in law, means a small piece of land, not necessarily enclosed, around a dwelling house, and generally includes the buildings used for domestic purposes in the conduct of family affairs. The term has no application to any building not used as a dwelling."

There is no testimony tending to show the right of the officers to enter the home or curtilage of the defendant, and so far as the record discloses, the testimony tends to show that when they were upon the curtilage of the defendant they were trespassers, having no search warrant to search the premises, and no warrant for the arrest of the defendant, and the only reason they had for going upon the premises and searching the same was that they had apprehended a man in the public road in front of defendant's premises carrying a small paper sack, which they investigated and found to contain a half pint of whisky, presumably purchased from the defendant. The officers were not present when the defendant sold the whisky to Greenwalt, if he in fact sold it.

We quote from Mosier v. State, 59 Okla. Cr. 106, 56 P. 2d 908:

"Where an officer could not observe and become cognizant of the act constituting the offense by the use of his senses, it could not be committed in his presence so as to authorize the search and the arrest of the defendant without a warrant."

In this case the evidence clearly shows that the defendant was engaged in the liquor business. Had the officers made an effort to comply with the settled law of this state, as written in the Constitution and statutes, it would not be necessary to reverse the case, but it would be affirmed, and the defendant forced to suffer the punishment which he deserves for a violation of the law. But no matter how guilty, under our system of government, he is entitled to a fair and impartial trial, as guaranteed under the Constitution and laws of this state.

In Ellis v. State, 34 Okla. Cr. 36, 244 P. 831, it is said:

"All unlawful searches and seizures are unreasonable within the meaning of section 30 of the Bill of Rights, forbidding unreasonable searches and seizures.

"In a prosecution for unlawful possession of intoxicating liquor, defendant cannot be convicted upon evidence obtained by a search and seizure of defendant's premises without a warrant authorizing it, and neither the liquor so seized nor evidence of the possession thereof so acquired is admissible against him."

We are of the opinion that the testimony in this case was insufficient to authorize the officers to go into defendant's yard or upon the curtilage of defendant's home and begin an investigation. In Russell v. State, 37 Okla. Cr. 71, 256 P. 758, this court held:

"The search of a barn within the curtilage of a dwelling house, by an officer without a search warrant, is an unreasonable search, and evidence so obtained, when timely objection is made, should be excluded."

The evidence offered by the state was incompetent, and, timely objection having been made by motion to suppress the same before the trial began, such evidence should have been excluded.

There were other errors assigned, but we do not deem it necessary to discuss them.

Because all of the evidence offered by the state was obtained illegally, and in violation of the constitutional rights of the defendant, the judgment of the county court of Choctaw county is reversed, and the cause remanded with directions to dismiss.

BRETT, P. J., and JONES, J., concur.